THE STATE EX REL. ARCE, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Arce v. Indus. Comm.,*
**105 Ohio St.3d 90, 2005-Ohio-572.**]

(No. 2004–0675—Submitted January 11, 2005—Decided March 2, 2005.)

---

**Per Curiam.**

{¶ 1} Appellee Hirzel Canning Company, Inc. turns cabbage into sauerkraut. This process requires the cabbages to be cored. To do so, Hirzel uses four Smith cabbage-coring machines. Used universally by the industry, the Smith coring machine is a large, seemingly stationary machine with an operator's platform, loading station, rotating coring knife, and a discharge station that moves the cored cabbage onto a conveyor belt for further processing. While it is not clear when all of these machines were placed into service at Hirzel, it is agreed that the one germane to this litigation was placed into service in 1969 or 1970.

{¶ 2} On October 26, 1999, appellant-claimant, Blanca A. Arce, was injured when she was cut by the coring knife. After claimant's workers' compensation claim was allowed, she sought additional compensation, alleging that Hirzel had violated a specific safety requirement ("VSSR"), Ohio Adm.Code 4121:1–5–11(D)(13) (now 4123:1–5–11[D][13] ). That section mandates that all power knives, where exposed to contact, be guarded. The pivotal issue, however, quickly became one of code applicability: While Ohio Adm.Code Chapter 4121:1–5 (now 4123:1–5) was in effect on the date of injury, Safety Code IC–5 was in effect when the machine was placed into service.

{¶ 3} A staff hearing officer for appellee Industrial Commission of Ohio denied claimant's application after finding that the cited specific safety requirement did not control. He relied on *State ex rel. Ohio Mushroom Co. v. Indus. Comm.* (1989), 47 Ohio St.3d 59, 547 N.E.2d 973, which held that the machine's date of placement into service, not the date of injury, controlled which version of the Safety Code applied. Because the coring machine was placed into service in 1969 or 1970, Safety Code IC–5, not Ohio Adm.Code Chapter 4123:1–5, applied. This

finding defeated claimant's VSSR application, since IC–5 had no safety regulations for knife machines such as the coring machine.

{¶ 4} Throughout the hearing, claimant argued that *Ohio Mushroom* was fatally flawed and urged the commission to instead apply *State ex rel. Colliver v. Indus. Comm.* (1999), 84 Ohio St.3d 476, 705 N.E.2d 349, a VSSR case that applied the date of injury. The commission declined, finding that *Colliver* was distinguishable. The commission concluded that *Colliver* applied only to situations where the injurious device was *not* deemed to be an installation or construction as those terms are used in Ohio Adm.Code 4123:1–5–01(A). Because the machine in question was deemed by the commission to indeed be an installation, the date of service governed.

{¶ 5} Claimant petitioned the Court of Appeals for Franklin County for a writ of mandamus, alleging that the commission had abused its discretion in applying the code in effect on the machine's date of service. The court of appeals upheld the commission's analysis and denied the writ, prompting claimant's current appeal.

{¶ 6} Over the years, there have been several versions of the safety code. In 1989, *State ex rel. Ohio Mushroom Co. v. Indus. Comm.*, 47 Ohio St.3d 59, 547 N.E.2d 973, declared that "[c]ode applicability * * * is controlled by the date the machine in question was placed into service, not by the date of injury." Id. at 60, 547 N.E.2d 973. Claimant characterizes *Ohio Mushroom*'s reasoning as flawed, with the result that employee safety is compromised. She urges this court to overrule it, and upon review, we are inclined to agree. Ironically, however, while our decision today will ultimately clarify a hazy area for future litigants, it will not, given the facts of this case, advance this claimant's cause.

{¶ 7} Generally, a claimant's workers' compensation rights are governed by the law in effect on the date of injury. *Colliver*, 84 Ohio St.3d at 478, 705 N.E.2d 349. *Ohio Mushroom* declared an explicit exception in a decision that, upon reexamination, has two flaws. First, it does not discuss Ohio Adm.Code 4121:1–5–01(A), the grandfather clause governing workshops and factories. That provision, now found in 4123:1–5–01(A), states:

{¶ 8} "Installations or constructions built or contracted for prior to the effective date (shown at the end of each rule) of any requirement shall be deemed to comply with the provisions of these requirements if such installations or constructions comply either with the provisions of these requirements or with the provisions of any applicable specific safety requirement which was in effect at the time contracted for or built."

{¶ 9} Under Ohio Adm.Code 4123:1–5–01(A), the only time that date of injury does *not* control applicability is when the injurious device is an installation or construction. *Colliver*, 84 Ohio St.3d 476, 705 N.E.2d 349; *State ex rel. McVay v.*

*Indus. Comm.* (1999), 86 Ohio St.3d 587, 589, 715 N.E.2d 1166. As *Colliver* noted, this exception for "installations or constructions" was presumably motivated by the drafters' recognition of the "practical difficulty or undue hardship" of requiring an employer to remove or retrofit massive pieces of machinery every time the code was amended. Id. at 480, 705 N.E.2d 349. The financial outlay and interruption to normal business operations could well be ruinous.

{¶ 10} This is not true, however, of many of the less cumbersome tools, devices, and equipment that are used daily in workshops and factories. *Ohio Mushroom,* however, failed to consider Ohio Adm.Code 4123:1–5–01(A), resulting in a holding that seems to cover all items found within a workshop or factory. *Colliver* has deemed this breadth inappropriate:

{¶ 11} "The safety code does not define the words 'installations' or 'constructions.' Armco [the employer] claims that the drafters of the grandfather clause intended 'installations' and 'constructions' to encompass everything for which the chapter establishes a safety requirement. This would, in effect, grandfather ladders, scaffolds, portable explosive fastening tools, hand tools, and other motorized vehicles and equipment regulated in the Ohio Administrative Code.

{¶ 12} "Armco's broad interpretation, however, ignores the plain meaning of 'installations' and 'constructions,' words that customarily refer to something that can be installed or affixed to a structure. Vehicles generally are not thought of as having been installed or constructed. In addition, Armco's broad interpretation would provide employers with an exemption for a plethora of old machinery or equipment regardless of the size or cost. This would tacitly reward employers who retain outdated tools and other devices at the expense of employees' safety.

{¶ 13} "Although the drafters of the grandfather clause likely were sensitive to an employer's practical difficulty or undue hardship, we do not believe that they intended a blanket exemption for all pre-rules fixtures and equipment, including vehicles, equipment, and tools." Id., 84 Ohio St.3d at 480, 705 N.E.2d 349.

{¶ 14} *Ohio Mushroom* has a second flaw. The two cases it relied upon—*State ex rel. Sanchez v. Indus. Comm.* (1985), 18 Ohio St.3d 46, 18 OBR 81, 479 N.E.2d 864, and *State ex rel. Cunningham v. Indus. Comm.* (1987), 30 Ohio St.3d 73, 30 OBR 176, 506 N.E.2d 1179—offer tenuous support at best. While the code provisions applied in *Sanchez* and *Cunningham* were those in existence on the machine's service date and not the date of injury, neither the grandfather clause nor the concept of installation or construction was discussed, suggesting that the issue of which code to apply was never raised. Equally important, even if the issue had been raised, *Sanchez* and *Cunningham* appear to be distinguishable from *Ohio Mushroom.* *Sanchez* and *Cunningham* involved a power press and an arc/butt strip welder, the descriptions of which implied massive immovable

machines suggestive of an installation or construction, which would comport with our later decisions in *Colliver* and *McVay*.

{¶ 15} *Colliver* recognized the problems with *Ohio Mushroom* and surmised that the court in that case implicitly concluded that the machine at issue was an installation or construction. Unfortunately, under the standards set forth in *Colliver, McVay,* and *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster* (1986), 22 Ohio St.3d 191, 22 OBR 275, 489 N.E.2d 288, the machine in *Ohio Mushroom* would not qualify as either. While the two terms are undefined, *Colliver, McVay,* and *Commercial Lovelace* uniformly indicate that size, relative permanence, and immobility are key components of an installation or construction. The machine in *Ohio Mushroom* was a spawner—a comparatively small, lightweight device for tending mushroom beds. Similar in design to a rototiller, it was a mobile, portable device. These elements all contradict the picture of an installation or construction painted by the aforementioned cases.

{¶ 16} *Colliver* took the important step of limiting *Ohio Mushroom,* but as the instant case demonstrates, the latter case remains a source of confusion. The time has now come to end any further controversy by overruling *Ohio Mushroom.* Having now done so, we find that the commission—despite its reliance on *Ohio Mushroom*—has nevertheless addressed what is, in fact, the key question in this case. It has already decided that the Smith coring machine is an installation as contemplated by Ohio Adm.Code 4123:1–5–01(A).

{¶ 17} Claimant challenges this decision, citing language from *Colliver.* At issue there was a coil tractor. We found that it was not an installation or construction because those terms "customarily refer to something that can be installed or affixed to a structure. Vehicles generally are not thought of as having been installed or constructed." Id., 84 Ohio St.3d at 480, 705 N.E.2d 349. Claimant also cites purportedly comparable language from *Commercial Lovelace* that analogized installations and constructions to "trade fixtures." Id., 22 Ohio St.3d at 194, 22 OBR 275, 489 N.E.2d 288. Because there is no evidence that the coring machine in this case was permanently attached to the plant's structure, claimant maintains that it cannot be an installation or construction.

{¶ 18} This argument is tenuous. First, *Colliver* did not say that a machine *must* be attached to a structure to be considered an installation or construction. It stated that it *could* be and, in fact, often was, but that fact does not translate into a requirement. Moreover, as observed by Hirzel, a "fixture" can have different interpretations. It quotes, for example, Black's Law Dictionary's description of a "trade fixture" as "[r]emovable personal property that a tenant attaches to leased land for business purposes, such as a display counter. Despite its name, a trade fixture is not usu[ally] treated as a fixture—that is, as irremovable." Id. (8th Ed.2004) 669.

{¶ 19} Second, the interpretation of a specific safety requirement is within the commission's sound discretion. *State ex rel. Harris v. Indus. Comm.* (1984), 12 Ohio St.3d 152, 12 OBR 223, 465 N.E.2d 1286. Moreover, because a VSSR is a penalty, it must be strictly construed, and all reasonable doubts concerning the interpretation of the specific safety requirement must be construed against its applicability to the employer. *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 172, 545 N.E.2d 1216. In this case, the commission relied on the machine's large size, its weight, its lack of mobility, and the fact that it was "clearly set up for use in a specific location" as evidence that the machine is an installation. This reasoning—particularly its reference to a lack of mobility—comports with our earlier decisions in *Colliver, Commercial Lovelace,* and *McVay.* The commission did not, therefore, abuse its discretion in finding that the coring machine was an installation and hence subject to the grandfather clause.

{¶ 20} This finding, of course, means that no VSSR can be found if the coring machine satisfied *either* the current requirements of Ohio Adm.Code 4121:1–5 *or* "any applicable specific safety requirement which was in effect at the time [the machine was] contracted for or built." Ohio Adm.Code 4123:1–5–01(A). In this case, the commission looked to the latter and determined that the coring machine did not violate any provisions of the code in effect when the machine was placed into service, i.e., Safety Code IC–5. Accordingly, it did not abuse its discretion in denying a VSSR award.

{¶ 21} The judgment of the court of appeals is affirmed for the reasons stated above.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Gallon & Takacs Co., L.P.A., and Theodore A. Bowman, for appellant.

Eastman & Smith, Ltd., Thomas A. Dixon and Richard L. Johnson, for appellee Hirzel Canning Company.

Jim Petro, Attorney General, and Keith D. Blosser, Assistant Attorney General, for appellee Industrial Commission.