THE STATE EX REL. GILBERT, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Gilbert v. Indus. Comm.*, 116 Ohio St.3d 243, 2007-Ohio-6096.]

(No. 2006–1949—Submitted September 11, 2007—Decided November 21, 2007.)

---

**Per Curiam.**

{¶ 1} We must determine whether appellee Industrial Commission of Ohio abused its discretion in finding that appellee American Hood Cleaning II, Inc. ("AHC") did not violate former Ohio Adm.Code 4121:1–5–17(F)(1), a specific safety requirement. Because we find that the commission did not abuse its discretion, we affirm the judgment of the court of appeals.

{¶ 2} AHC specializes in cleaning commercial kitchen exhaust systems. Part of the process involves the use of a chemical stripper to remove accumulated grease and dust. According to AHC President Dan Branigan, the chemical

stripper was mixed with water and transferred into a container that had a hose and a spray nozzle. The employee was to spray the chemical stripper into the exhaust hood by reaching inside a plastic curtain draped around the hood. A pressure washer rinsed off the substance after chemical cleaning was complete. The employee finished by removing the protective plastic curtain and wiping down and polishing the unit.

{¶ 3} Appellant Harvey Gilbert worked as an exhaust-system cleaner for AHC for four years and, before that, had performed the same job for a competitor. In 1999, Gilbert began having episodes of itching and hives. In July 2001, these symptoms were accompanied by anaphylaxis. Dr. D. Ann Middaugh examined Gilbert, assessed his history and his reported work environment, and diagnosed a restrictive lung disease "likely due to the long term, low level exposures to the stripper."

{¶ 4} Gilbert filed a workers' compensation claim, which was allowed for "fumes/vapor, chronic respiratory condition and acute bronchiolitis." He also applied for additional compensation, alleging that AHC had committed numerous violations of specific safety requirements ("VSSRs"), including former Ohio Adm.Code 4121:1–5–17(F)(1), now 4123:1–5–17(F)(1), which required the employer to provide respiratory protection "where there are air contaminants as defined in rule 4121:1–5–01 of the Administrative Code."

{¶ 5} At a hearing before a commission staff hearing officer, the parties agreed that no respirator was provided to Gilbert until after he complained to AHC of respiratory problems. AHC maintained that a respirator had not been provided previously because the level of chemical exposure was below the hazard threshold. In support, AHC relied on an air-quality test performed by the Occupational Safety and Health Administration ("OSHA") during an AHC cleaning job just days after Gilbert's diagnosis. That test measured the amounts of sodium hydroxide and perchloroethylene in the work environment and determined that they were far below the permissible exposure limits as defined by the agency.

{¶ 6} Gilbert disagreed with Branigan's description of the cleaning process and the amount of chemical to which he had been exposed. He also argued that the OSHA test performed after his diagnosis was not evidence of the amount of chemicals that he had been exposed to earlier. He cited the chemical stripper's Material Safety Data Sheet, which indicated that in sufficient concentrations, both sodium hydroxide and perchloroethylene can be harmful—a point that no one disputes. Gilbert also relied heavily on Dr. Middaugh's report, which confirmed that Gilbert had an occupational disease caused by chemical exposure.

{¶ 7} On November 29, 2004, the staff hearing officer denied a VSSR award:

{¶ 8} "The Staff Hearing Officer finds that regulations of O.A.C. 4121:1–5–17(F)(1)(2) do not apply. The Staff Hearing Officer finds that air sampling

performed by OSHA on September 24, 2001 confirms that there were *not* hazardous concentrations of dust, fumes, mist, vapors or gases within the definition of 'air contaminants' contained in O.A.C. 4121:1–5–01(B)(4)—OSHA Air Sampling Results—Kennings Circle K Restaurant. The Staff Hearing Officer finds 'air contaminants' as defined under O.A.C. 4121:1–5–01 were not found to be present.

{¶ 9} "The Staff Hearing Officer finds that the employer complied with the specific safety requirement, O.A.C. 4121:1–5–17(F)(1)(2). The Staff Hearing Officer finds that evidence presented does *not* establish that the proximate cause of injured worker's injuries was employer's non-compliance with O.A.C. 4121:1–5–17(F)(1)(2) as alleged by injured worker. The Staff Hearing Officer finds employer was not in violation of O.A.C. 4121:1–5–17(F)(1)(2)." (Emphasis sic.)

{¶ 10} Rehearing was denied:

{¶ 11} "The Staff Hearing Officer does not find an obvious mistake of fact or a clear mistake of law. This Staff Hearing Officer finds that the 09/24/2001 OSHA report is evidence related to hazardous concentrations of dust, fumes, etc. The Staff Hearing Officer finds no obvious mistake of fact related to that OSHA report.

{¶ 12} "The Staff Hearing Officer also finds no clear mistake of law. The VSSR Staff Hearing Officer relied on the OSHA report to find the requirements of O.A.C. 4121:1–5–01(B)(4) are not met. The VSSR Staff Hearing Officer further found no violation of O.A.C. 4121:1–5–17(F)(1)(2) because the requirements of O.A.C. 4121:1–5–01(B)(4) are not met. This Staff Hearing Officer finds no clear mistake of law based on the VSSR Staff Hearing Officer analysis."

{¶ 13} Gilbert filed a complaint in mandamus in the Court of Appeals for Franklin County, objecting primarily to the commission's reliance on OSHA data obtained after the relevant exposure period. The magistrate's analysis focused on the definition in former Ohio Adm.Code 4121:1–5–01(B)(74), now 4123:1–5–01(B)(74), of "hazardous concentrations" as those concentrations "which are known to be in excess of those which would not normally result in injury to an employee's health." The magistrate found that the commission's analysis was incomplete because it did not address what AHC knew about "the concentrations to which relator would be exposed in the performance of his job." 2006-Ohio-4484, 2006 WL 2506970, ¶ 76. The court of appeals did not adopt this conclusion, finding that the employer's knowledge was irrelevant, since the commission expressly found that there were not hazardous concentrations of air contaminants. Id. at ¶ 13. The court of appeals accordingly denied the writ, prompting Gilbert's appeal as of right to this court.

{¶ 14} The interpretation of a specific safety requirement lies with the commission. *State ex rel. Arce v. Indus. Comm.*, 105 Ohio St.3d 90, 822 N.E.2d 795, ¶ 19.

A VSSR award, however, is a penalty against the employer, so all reasonable doubts concerning the interpretation of the safety regulation must be "construed against its applicability to the employer." *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 172, 545 N.E.2d 1216.

{¶ 15} The controversy centers on Ohio Adm.Code 4123:1–5–17(F)(1):

{¶ 16} "(F) Respiratory protection.

{¶ 17} "(1) Where there are air contaminants as defined in rule 412[3]:1–5–01 of the Administrative Code, the employer shall provide respiratory equipment approved for the hazard. It shall be the responsibility of the employee to use the respirator or respiratory equipment."

{¶ 18} "Air contaminants" are "hazardous concentrations of fibrosis-producing or toxic dusts, toxic fumes, toxic mists, toxic vapors, toxic gases, or any combination of them when suspended in the atmosphere." Former Ohio Adm.Code 4121:1–5–01(B)(4), now 4123:1–5–01(B)(4). "Hazardous concentrations," in turn, are those concentrations "which are known to be in excess of those which would not *normally* result in injury to an employee's health." (Emphasis added.) Former Ohio Adm.Code 4121:1–5–01(B)(74), now 4123:1–5–01(B)(74).

{¶ 19} Gilbert's position is essentially this: I have an occupational disease due to chemical exposure; ergo, the level of exposure was hazardous. This position, from the outset, conflicts with the definition of "hazardous concentrations." The definition describes concentrations that would not *normally* cause injury. As used in that definition, "normally" is a qualifying term. Inherent in the use of this word is the recognition that some persons may have an abnormal sensitivity to a given substance, for which the employer could not be held accountable. The presence of an occupational disease does not necessarily establish that hazardous concentrations of contaminant existed, since a person may have contracted an occupational disease because of abnormal sensitivity to or because of hazardous concentrations of a contaminant.

{¶ 20} Gilbert's logic was previously rejected in *State ex rel. Garza v. Indus. Comm.* (2002), 94 Ohio St.3d 397, 763 N.E.2d 174. At issue was whether an accident occurred during a press's "operating cycle." Responding to an argument similar to Gilbert's, we wrote:

{¶ 21} "These cases can be difficult because of the simple truth exemplified by the claim before us: the press obviously cycled when the claimant's arm was in the danger zone or claimant would not have been hurt.

{¶ 22} "The claimant's position reflects this reasoning. The hidden danger in this approach, however, is that, in effect, it declares that because there was an injury there was *by necessity* a VSSR—i.e., someone was injured; therefore, the safety device was inadequate. This violates two workers' compensation tenets:

(1) the commission determines the presence or absence of a violation and (2) all reasonable doubts as to a specific safety requirement's applicability must be resolved in the employer's favor." (Emphasis sic.) Id. at 400, 763 N.E.2d 174.

{¶ 23} *Garza* was overruled on other grounds by *State ex rel. Advanced Metal Precision Prods., Inc. v. Indus. Comm.*, 111 Ohio St.3d 109, 2006-Ohio-5336, 855 N.E.2d 435, but its discussion on this point is still viable. To hold that the mere presence of an occupational disease establishes that a VSSR occurred would in effect impose strict liability on an employer, contrary to a long line of cases. See, e.g., *State ex rel. M.T.D. Prods. v. Stebbins* (1975), 43 Ohio St.2d 114, 72 O.O.2d 63, 330 N.E.2d 904; *State ex rel. Taylor v. Indus. Comm.* (1994), 70 Ohio St.3d 445, 639 N.E.2d 101; *State ex rel. S & Z Tool & Die Co. v. Indus. Comm.* (1999), 84 Ohio St.3d 288, 703 N.E.2d 779. We have recognized "the practical impossibility of guaranteeing that a device will protect against all contingencies." *State ex rel. Jeep Corp. v. Indus. Comm.* (1989), 42 Ohio St.3d 83, 84, 537 N.E.2d 215, citing *State ex rel. Harris v. Indus. Comm.* (1984), 12 Ohio St.3d 152, 12 OBR 223, 465 N.E.2d 1286. The purpose of specific safety requirements is to "provid[e] *reasonable,* not absolute safety for employees." (Emphasis sic.) Id.

{¶ 24} Specific safety requirements, moreover, must contain "specific and definite requirements or standards of conduct * * * which are of a character plainly to apprise an employer of his legal obligations toward his employees." *State ex rel. Holdosh v. Indus. Comm.* (1948), 149 Ohio St. 179, 182, 36 O.O. 516, 78 N.E.2d 165. A specific standard, however, cannot arise from individual susceptibility. There must be a quantifiable baseline from which the employer can work in order to measure compliance. The baseline cannot vary from employee to employee.

{¶ 25} Consistent with this premise, the commission used as its standard OSHA's limits on permissible exposure for sodium hydroxide and perchloroethylene. Permissible levels are 2.00 mg/m$^3$ and 200 ppm, respectively. OSHA testing during cleaning by an AHC crew disclosed much lower concentrations, with sodium hydroxide at .01 mg/m$^3$ and perchloroethylene at only 6 ppm. Relying on this data, the commission found no hazardous concentration of air contaminants and hence no duty on the employer to provide respiratory protection under Ohio Adm.Code 4123:1–5–17(F)(1).

{¶ 26} Gilbert objects vigorously to this data, arguing that the sampling was done after his exposure period and thus is irrelevant to the amount of exposure he encountered prior to his diagnosis. We reject this argument. In some cases, testing after the injurious exposure will be irrelevant because the work environment has changed. New exhaust systems may have been installed, ventilation may have been improved, or other safety initiatives may have been put into place.

On the other hand, where the test environment replicates the earlier exposure conditions, the testing results may be significant.

{¶ 27} The varying facts that may exist underscore the importance of preserving the commission's evidentiary discretion and authority. Many times, contemporaneous air-sampling data will not be available because—absent a duty to monitor—employers may assume that air quality is satisfactory until alerted otherwise. Consequently, in some situations, the only test results available will be either from a prior test or from a test performed after a problem has been alleged. For this reason, it is crucial to maintain the commission's ability to evaluate each situation individually in order to determine whether a particular test result is relevant to the claim being made.

{¶ 28} In this case, Gilbert was diagnosed on September 5, 2001. The OSHA air-quality test was done on September 24, 2001, just 19 days later. The commission had the evidentiary discretion to conclude that this test was representative of the amount of contaminants to which AHC's cleaning procedure generally exposed employees. This data, therefore, provided the requisite evidence to support the conclusion that Gilbert was not exposed to hazardous concentrations of air contaminants.

{¶ 29} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————————

Harris & Burgin, L.P.A., and Jeffrey W. Harris, for appellant.

Marc Dann, Attorney General, and Andrew J. Alatis, Assistant Attorney General, for appellee Industrial Commission.

Dinsmore & Shohl, L.L.P., and Brian P. Perry, for appellee American Hood Cleaning II, Inc.