The State ex rel. Ross, Appellant, *v.* Industrial
Commission of Ohio et al., Appellees.

[Cite as *State ex rel. Ross v. Indus. Comm.,*
118 Ohio St.3d 73, 2008-Ohio-1739.]

(No. 2007–1007—Submitted March 25, 2008—Decided April 16, 2008.)

**Per Curiam.**

{¶ 1} At issue is the denial of appellant Anita Ross's application for permanent partial disability compensation ("PPD"). Ross sustained a lumbar sprain on January 21, 2002. She missed minimal time from work, and treatment was brief. Nine days after her injury occurred, Ross reported that her pain was "98% better" and that she did not need further physical therapy or analgesics. There is no indication that she had any further treatment.

{¶ 2} In mid 2004, Ross applied to the Bureau of Workers' Compensation for a PPD award. She did not, however, submit any medical evidence in support of her application. The bureau had her examined by Dr. Lawrence A. Kale, who thought that Ross's condition had completely resolved and left her with no permanent impairment. The bureau, relying on Dr. Kale, found no impairment and made no award. Ross objected, and the matter was set for hearing before a district hearing officer of appellee Industrial Commission of Ohio. Ross again submitted no medical evidence, and the district hearing officer accordingly found no impairment. Ross apparently did not move for reconsideration.

{¶ 3} Five months later, Ross moved for an increase in permanent partial disability. This time, she submitted the report of Dr. Brian W. Marshall. His report confirmed that Ross had had no treatment since that rendered in the first few days after the injury. He did not refer to any recent exacerbation of the injury or any increase in alleged symptoms since Dr. Kale examined her. Dr. Marshall concluded that she had an eight percent impairment.

{¶ 4} Dr. Waleed Mansour reviewed the medical file at the bureau's request. Based on the findings of Dr. Marshall, Dr. Mansour assessed a five percent permanent partial impairment. The bureau made a five percent award based on that report.

{¶ 5} Ross again objected and submitted a second report from Dr. Marshall. Having the same date as his previous report, the report was a verbatim copy of the earlier one with one exception—his assessment of impairment was now 11 percent instead of eight percent. No reason was given for the increase.

{¶ 6} A district hearing officer assessed five percent impairment based on Dr. Mansour's findings. Ross's former employer moved for reconsideration. A staff hearing officer vacated the award and found a zero percent impairment:

{¶ 7} "The Injured Worker previously filed a C–92 Application for Determination of Percentage of Permanent Partial Disability * * * and said Application was ruled upon by the Administrative Order of 10/14/2004. Based upon the 9/10/2004 medical examination by Lawrence A. Kale, M.D., the Administrator * * * found that there was *no* Percentage of a Permanent Partial Disability resulting from the allowed [condition]. * * *

{¶ 8} "Then, on 5/23/2005, the Injured Worker filed a C–92–A Application for a subsequent determination (increase) of Percentage of Permanent Partial Disability.

{¶ 9} "However, under Ohio Revised Code Section 4123.57(B), the Injured Worker bears the burden of proving that there are 'new and changed circumstances' which have developed since the time of the hearing on the last determination of Percentage of Permanent Partial Disability, in order to obtain an increase in the Permanent Partial Disability award.

{¶ 10} "The Injured Worker was previously examined, on 9/10/2004, by Edmund Wymyslo, M.D. Dr. Wymyslo reviewed the Injured Worker's medical records and noted that, 'At the time of last treatment on 1/30/2002, she was found to be "98% better." ' He also made note of the fact that, although she had been scheduled for physical therapy, she told the physical therapist that she was better and did not need physical therapy and was no longer taking pain medications. After further review of her medical records and the performance of a physical examination, Dr. Wymyslo stated his professional medical opinion that, 'The claimant's current complaints are, more probably than not, not related to the soft tissue injury resulting from the 2002 claim.'

{¶ 11} "It is the finding of this Staff Hearing Officer that the Injured Worker failed to meet her burden of proving 'new and changed circumstances' since the time of the prior hearing on the original C–92 Application * * *. Two reports have been submitted by the Injured Worker, both from Brian W. Marshall, D.O., one indicating an 8% and the other indicating an 11% Percentage of Permanent Partial Disability. However, both of those exams are word-for-word identical, *except* for the percentage stated. Therefore, this Staff Hearing Officer does *not* find the opinion of Dr. Marshall to be persuasive, in light of the prior well-reasoned opinion of Edmund Wymyslo, M.D.

{¶ 12} " * * *

{¶ 13} "It is the further finding of this Staff Hearing Officer that the Injured Worker does *not* have *any* Permanent Partial Disability resulting from the residual of the allowed sprain * * *." (Emphasis sic.)

{¶ 14} Ross's complaint for a writ of mandamus in the Court of Appeals for Franklin County was unsuccessful. The court upheld the commission's conclusion that no new and changed circumstances supported an increase.

{¶ 15} Ross now appeals to this court as of right.

{¶ 16} R.C. 4123.57(A) requires that an application for an increase in PPD be "supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination."

{¶ 17} Contrary to Ross's representation, the mere submission of new evidence is not automatically a new and changed circumstance. *State ex rel. Keith v. Indus. Comm.* (1991), 62 Ohio St.3d 139, 141–142, 580 N.E.2d 433; *State ex rel. Poneris v. Indus. Comm.*, 111 Ohio St.3d 264, 2006-Ohio-5702, 855 N.E.2d 1203.

{¶ 18} The only medical evidence before the commission on Ross's first application for PPD indicated that her condition had resolved. She thus was required to demonstrate, in her second application, that something had changed—e.g., an exacerbation of her condition or the allowance of a new condition. Ross did not do this. She simply submitted the reports of a doctor who disagreed with Dr. Kale's opinion. Dr. Marshall's reports do not indicate that Ross suffered a flare-up or even underwent renewed treatment, and Ross herself makes no such allegation. There is nothing to indicate that Ross's medical status is any different than it was eight months earlier when Kale saw her. Marshall simply thinks she has an impairment. The reports do no more than reflect disagreement between two examiners. They do not show a new and changed circumstance.

{¶ 19} Ross assails any reliance to Kale's report, accusing the commission of reviving a stale report to deny her compensation. That is not what the commission did. Sometimes new and changed circumstances cannot be determined without knowing what the old circumstances were. That is why the commission necessarily referred to Kale's earlier report.

{¶ 20} Ross cites Dr. Mansour's report as evidence of new and changed circumstances, but her reliance is misplaced. Mansour's evaluation was based not on an examination of Ross but on a review of Dr. Marshall's first report. Because Dr. Marshall listed no new and changed circumstances, Dr. Mansour was precluded from reaching a different conclusion.

{¶ 21} Finally, Ross criticizes the staff hearing officer's repeated reference to a report from Dr. Edmund Wymyslo. All parties agree that no such report exists,

but contrary to Ross's argument, this reference is not fatal. Information discussed in the order was taken verbatim from Dr. Kale's report. The hearing officer referred to him repeatedly by the wrong name, but there is no doubt to whom, and to which report, the staff hearing officer was referring.

{¶ 22} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Bevan & Associates, L.P.A., Inc., Cindy Kobal, and Thomas W. Bevan, for appellant.

Marc Dann, Attorney General, and Kevin J. Reis, Assistant Attorney General, for appellee.