THE STATE EX REL. SHELLY COMPANY, APPELLANT,
v. STEIGERWALD ET AL., APPELLEES.

[Cite as *State ex rel. Shelly Co. v. Steigerwald,*
**121 Ohio St.3d 158, 2009-Ohio-585.**]

(No. 2007–2189—Submitted December 16, 2008—Decided February 17, 2009.)

**Per Curiam.**

{¶ 1} David J. Steigerwald was a heavy-equipment operator for appellant Shelly Company[1] and was killed in a workplace accident. His widow, appellee Christine Steigerwald, has alleged that Shelly Company violated several specific safety requirements, resulting in her husband's death. Appellee Industrial Commission of Ohio agreed, and the Court of Appeals for Franklin County denied Shelly Company's petition for a writ of mandamus to compel the commission to vacate the award. The issue is now presented for our review.

{¶ 2} On October 30, 2000, Shelly Company employees were repaving part of the Ohio Turnpike. Decedent and co-worker James Pennington spent a few minutes conversing while decedent waited for his work equipment to become available. Pennington climbed into his truck to complete some paperwork before starting to work. He then started his truck and began to back up along the shoulder of the road. Maneuvering the truck—a seven-ton Ford F–450 service vehicle—was precarious because Pennington had to avoid two vehicles parked behind him as well as maneuver around two loaded dump trucks in the adjacent lane. As a result, he backed up extremely slowly, going one, perhaps two, miles per hour.

{¶ 3} After Pennington cleared the vehicles, he continued backing up in the adjacent lane and suddenly felt the truck rise on the right-hand side. He immediately stopped and got out, only to find decedent under the truck, entangled in the right axle.

{¶ 4} Pennington screamed for help, and "in just a matter of seconds" the rest of the crew was there. Co-workers jacked up the rear of the truck while others worked to remove the right rear tires to free decedent from the axle. Despite their efforts, Steigerwald died at the scene.

---

1. Shelly Company is the successor of S.E. Johnson Companies, Inc., the party originally named in this action.

{¶ 5} Extensive investigation by the Ohio State Highway Patrol, Shelly Company, and the Occupational Safety and Health Administration ("OSHA") found no witnesses to the accident, since the rest of the crew was approximately 200 feet in front of the truck when the accident happened. In the immediate aftermath of the fatality, however, the Highway Patrol tested the truck's reverse warning alarm and found that it was not working. A vehicle inspection by the Shelly Company the next day confirmed this finding. The inspection showed that the backing-alarm switch that screwed into the transmission and the connector that hooked to it were not making good contact. As a result, the alarm worked only intermittently. The wires underneath the truck were loose and could easily disconnect from the alarm if they were disturbed.

{¶ 6} The evidence further revealed that there was no one who could definitively declare that the warning alarm was—or was not—working immediately before the accident. Even Pennington, the driver, could not say for sure because his windows were up and the cab was noisy due to the radio and outside traffic. He did state that "as far as [he] knew," the backing alarm was working and that the alarm had worked the last time he drove the vehicle. There is no evidence, however, that he had tested the alarm on the morning of the accident.

{¶ 7} The possibility that the backing alarm was not working prompted Christine Steigerwald to allege that her husband's death resulted from violations of specific safety requirements ("VSSR"), including former Ohio Adm.Code 4121:1–3–06:

{¶ 8} "(D) Motor Vehicles

{¶ 9} " * * *

{¶ 10} "(2) On mobile equipment having an obstructed view to the rear, the employer shall:

{¶ 11} "(a) Provide a reverse signal alarm audible above the surrounding noise, or

{¶ 12} "(b) Provide an observer to signal the assured clear distance."

{¶ 13} At the hearing, Steigerwald argued that because the evidence indicated that the alarm was not working after the mishap, it was reasonable to assume that it was not functioning immediately before it. Shelly Company disagreed, asserting that the alarm could just as easily have been disabled because the frantic attempts to rescue decedent dislodged the loose wires underneath the truck—a possibility noted by OSHA. At no time in the hearing or in its posthearing position paper did Shelly Company raise a "first-time equipment failure" defense.

{¶ 14} The staff hearing officer found that Shelly Company had violated a specific safety requirement that proximately caused decedent's death. She relied

heavily on the postaccident vehicle inspections that uniformly found that the alarm was not working and specifically rejected the theory that the alarm was disabled by the rescuers.

{¶ 15} Shelly Company sought a rehearing. In its motion, it raised for the first time the defense of first-time equipment failure, claiming that the staff hearing officer had committed a clear mistake of law in not addressing this issue. Rehearing was denied.

{¶ 16} Shelly Company filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in finding a VSSR. The court of appeals found that the commission's order had evidence to support it and denied the writ. *State ex rel. Shelly Co. v. Indus. Comm.*, Franklin App. No. 06AP–596, 2007-Ohio-5343, 2007 WL 2876080.

{¶ 17} Shelly Company now appeals to this court as of right.

{¶ 18} Shelly Company accuses the commission of abusing its discretion by (1) issuing an order without evidentiary support, (2) citing the wrong specific safety requirement in the order, (3) failing to address all the elements of the safety requirement, and (4) refusing to grant its motion for rehearing. Upon review, none of these propositions are persuasive.

{¶ 19} Shelly Company's last three arguments will be addressed first because they can be disposed of quickly. Steigerwald's VSSR application alleged violations of former Ohio Adm.Code 4121:1–3–06(D)(1), (2)(a), and (2)(b). The staff hearing officer found violations of (2)(a) and (b), but incorrectly listed the applicable sections as "4123–3–06(2)(a)(b)."[2] Shelly claims that this citation error makes the order fatally defective.

{¶ 20} *State ex rel. Ross v. Indus. Comm.*, 118 Ohio St.3d 73, 2008-Ohio-1739, 886 N.E.2d 198, undermines Shelly Company's position. In *Ross*, the commission denied compensation by quoting extensively from a report by a "Dr. Wymyslo." The report, however, was actually authored by a Dr. Kale. There was no Dr. Wymyslo. The claimant asserted that the incorrect reference invalidated the report. We disagreed:

{¶ 21} "Finally, [the claimant] criticizes the staff hearing officer's repeated reference to a report from Dr. Edmund Wymyslo. All parties agree that no such report exists, but contrary to Ross's argument, this reference is not fatal. Information discussed in the order was taken verbatim from Dr. Kale's report. The hearing officer referred to him repeatedly by the wrong name, but there is

---

2. The language of former Ohio Adm.Code 4121:1–3–06(D)(2)(a) and (b) now appears verbatim in Ohio Adm.Code 4123:1–3–06(D)(2)(a) and (b).

no doubt to whom, and to which report, the staff hearing officer was referring." Id. at ¶ 21.

{¶ 22} In the case at bar, the commission stresses that (1) the code sections are properly cited in the VSSR application and (2) both Steigerwald and the Shelly Company repeatedly cited the correct section in their position papers. Shelly Company also quoted the text of the correct code section verbatim in that document. The commission is accordingly correct in asserting that Shelly Company cannot credibly allege that it did not know which specific safety requirement was at issue or was found to have been violated.

{¶ 23} In its third argument, Shelly Company cites the language of former Ohio Adm.Code 4121:1–3–06(2)(a) and claims that the commission erred by failing to specifically address whether the backing alarm was "audible above the surrounding noise." This assertion has no merit. The commission specifically found that the alarm was not working. Obviously, if it was not working, it was not audible.

{¶ 24} Shelly Company next contends that the commission abused its discretion by denying its motion for rehearing. In that motion, Shelly Company claimed that the staff hearing officer committed a clear mistake of law by failing to consider a "first-time failure" defense. Shelly Company, however, never raised that defense at the hearing or in the position paper that followed. Shelly Company believes that this omission is irrelevant. *State ex rel. Schlegel v. Stykemain Pontiac Buick GMC, Ltd.,* 120 Ohio St.3d 43, 2008-Ohio-5303, 896 N.E.2d 143, says otherwise.

{¶ 25} In *Schlegel,* the claimant did not raise a particular defense to a voluntary-abandonment allegation at either the district or staff hearings. He finally raised it in a motion for rehearing and when that motion was denied, he alleged an abuse of discretion. He did not prevail:

{¶ 26} "Hearings before district and staff hearing officers are effectively as of right. A hearing before the commission is not. It is discretionary. R.C. 4123.511(E). So, too, is consideration of evidence submitted after a hearing. * * * The magistrate reasoned that because the staff hearing officer was not required to review belatedly submitted evidence, the commission could not be compelled to grant Schlegel's appeal in order to consider it. The resultant absence of this evidence from the administrative record bars its consideration here." Id. at ¶ 16. The same reasoning applies in the present case.

{¶ 27} Shelly Company's remaining argument contends that the commission erred in finding a VSSR because (1) there was no evidence that the backing alarm was not working when the accident occurred, (2) there was uncontradicted evidence that the alarm was working when the truck was last used, and (3) the

commission relied upon inspection reports that were based on postaccident testing. The law again favors the commission.

{¶ 28} This case is, by necessity, built upon inference, because no one witnessed the accident and no one can definitively state that the backing alarm was working or not working when the mishap occurred. The commission has substantial leeway in evaluating the evidence before it and drawing inferences from it. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936; *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880, ¶ 34. That authority encompasses VSSR cases:

{¶ 29} "This court has never required direct evidence of a VSSR. To the contrary, in determining the merits of a VSSR claim, the commission or its [staff hearing officer] like any factfinder in any administrative, civil, or criminal proceeding, may draw reasonable inferences and rely on his or her own common sense in evaluating the evidence." *State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.*, 98 Ohio St.3d 134, 2002-Ohio-7089, 781 N.E.2d 170, ¶ 69.

{¶ 30} Shelly Company particularly objects to the commission's reliance on postaccident vehicle-inspection reports. Those documents found that the alarm was inoperable, and from that, the commission extrapolated that if the alarm was not working immediately after the accident, it was not working when Steigerwald was struck. Shelly Company believes that this is an unreasonable inference, but recent case law contradicts that argument.

{¶ 31} In *State ex rel. Gilbert v. Indus. Comm.*, 116 Ohio St.3d 243, 2007-Ohio-6096, 877 N.E.2d 979, the claimant sought a VSSR award for a respiratory condition allegedly caused by excessive levels of air contaminants in the workplace. OSHA testing conducted shortly after claimant's diagnosis revealed contaminant levels well within permissible limits. Based largely on this evidence, the commission denied an additional award.

{¶ 32} The claimant in *Gilbert* made an argument similar to the one made here—that the test results were improperly considered because they did not reflect circumstances as they existed when he was exposed. We rejected that argument:

{¶ 33} "Gilbert [argues] that the sampling was done after his exposure period and thus is irrelevant to the amount of exposure he encountered prior to his diagnosis. We reject this argument. In some cases, testing after the injurious exposure will be irrelevant because the work environment has changed. New exhaust systems may have been installed, ventilation may have been improved, or other safety initiatives may have been put into place. On the other hand, where the test environment replicates the earlier exposure conditions, the testing results may be significant.

{¶ 34} "The varying facts that may exist underscore the importance of preserving the commission's evidentiary discretion and authority. Many times, contemporaneous air-sampling data will not be available because—absent the duty to monitor—employers may assume that air quality is satisfactory until alerted otherwise. Consequently, in some situations, the only test results available will be either from a prior test or from a test performed after a problem has been alleged. For this reason, it is crucial to maintain the commission's ability to evaluate each situation individually in order to determine whether a particular test result is relevant to the claim being made." Id., 116 Ohio St.3d 243, 2007-Ohio-6096, 877 N.E.2d 979, ¶ 26–27.

{¶ 35} *Gilbert* affirms the commission's authority to rely on postaccident evidence and to draw inferences from that data. While Shelly Company correctly notes that there is evidence suggesting that the alarm was broken during rescue efforts and that OSHA indeed reached that conclusion, this fact is inconsequential. As even Shelly Company acknowledges, the commission is not bound by OSHA findings. More important, so long as the commission's order is supported by "some evidence," "[i]t is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's." *State ex rel. Pass v. C.S.T. Extraction Co.* (1996), 74 Ohio St.3d 373, 376, 658 N.E.2d 1055.

{¶ 36} In this case, postaccident-inspection reports are evidence supporting the commission's conclusion that the warning signal was not working when the accident occurred. The commission did not, therefore, abuse its discretion in finding a VSSR.

{¶ 37} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Eastman & Smith, Ltd., John T. Landwehr, and Richard L. Johnson, for appellant.

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Edward D. Murray, and Owen J. Rarric, for appellee Steigerwald.

Richard Cordray, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for appellee Industrial Commission of Ohio.