OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State ex rel. Taylor, Appellant, v. Industrial Commission
of Ohio et al., Appellees.
[Cite as State ex rel. Taylor v. Indus. Comm. (1994),
Ohio St.3d       .]
Workers' compensation -- Motorized scissor lift -- Employee's
     death resulting from fall due to malfunctioning
     gate-locking mechanism -- Additional award for alleged
     violations of several specific safety requirements denied,
     when.
     (No. 93-1464 -- Submitted July 27, 1994 -- Decided
September 28, 1994.)
     Appeal from the Court of Appeals for Franklin County, No.
92AP-1203.
     Decedent, Gregory Taylor, was employed by appellee Martin
Painting & Coating Company.  On July 10, 1987, decedent was
instructed to air-blast ceiling beams in a barn at the Ohio
State Fairgrounds.  To do so, decedent used a motorized scissor
lift called a "Mite-E-Lift."  The Mite-E-Lift was topped by a
46 inch x 87 inch work platform that was surrounded by a toe
board and guardrails that were forty-two inches high.  The
platform was accessed via a gate with a latched spring hinge
that locked automatically upon closure.
     Late that morning, decedent was found dead on the barn
floor.  The Mite-E-Lift was found elevated to twenty-four feet
and the gate was observed swinging outward.  State Highway
Patrol investigators reported:
     "The gate is supposed to be spring loaded and close
automatically but it was found that the gate locking mechanism
failed to operate.  Once the gate was unlatched, it swung back
and forth freely and failed to close.  The locking mechanism of
the platform car is sensitive and can be tripped open by the
merest brush of the hand or pressure from the air hose."
     Martin's foreman, Larry R. Adkins, indicated that, to his
knowledge, the lock/latch mechanism on the lift in question had
always worked properly and had never previously malfunctioned.
     Appellant-widow, Bobbie Taylor, successfully filed a
workers' compensation death claim on decedent's behalf.  She
later applied for additional compensation, alleging violations

of several specific safety requirements ("VSSRs").  Appellee Industrial Commission of Ohio denied the application, writing:

"4121:3-03(A)(7) [sic] was not violated for the reason that it is part of the scope of 4121:1-3-03 and is, thereby, not a specific safety requirement.

"Rule[s] 4121:1-3-03(J)(1-7) was [sic] not violated.  The scope for these rules under 4121:1-3-03(A) reads:

"'The requirements of this rule relate to the personal protective equipment listed immediately below, as required for employees on operations described in this rule in which there is a known hazard, recognized as injurious to the health or safety of the employee.'

"Evidence on file and testimony presented at the hearing fail to support a finding that the employer of record was aware of any known hazard, i.e., the failure of the self-closing gate to remain closed.

"Regulation 4121:1-3-04(E) was not violated for the reason that standard guard railing and toe boards were installed.

"Regulation 4121:1-3-10 is not applicable for the reason that the scissors [sic] lift from which the decedent fell was a self-propelled elevated work platform and not a scaffold."

Rehearing was denied.

Appellant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying her VSSR application.  The appellate court denied the writ.

This cause is now before this court upon an appeal as of right.

Colasurd & Colasurd Co., L.P.A., and Christopher P. Colasurd, for appellant.

Lee Fisher, Attorney General, and Yolanda L. Barnes, Assistant Attorney General, for appellee Industrial Commission.

Buckingham, Doolittle & Burroughs and Brett L. Miller, for appellee Martin Painting & Coating Co.

Per Curiam.  Claimant challenges the denial of four VSSRs: Ohio Adm. Code 4121:1-3-10(C)(3) and (C)(4)(b), 4121:1-3-04(E)(1), and 4121:1-3-03(J)(1).  For the reasons to follow, we affirm the judgment of the appellate court.

Ohio Adm. Code 4121:1-3-10 governs scaffolding.  The commission denied all violations alleged thereunder after concluding that the regulation did not cover the type of equipment from which claimant fell.  The commission reached the right result for the wrong reason.

The commission characterized the Mite-E-Lift as a "self-propelled elevated work platform."  A "scaffold" is "any temporary elevated work platform and its supporting structure used for supporting employees, materials or equipment."  Ohio Adm. Code 4121:1-3-10(B)(30).  In addition, Ohio Adm. Code 4121:1-3-10(H) expressly covers "self-propelled elevated work platforms."  The Mite-E-Lift, therefore, is amenable to Ohio Adm. Code 4121:1-3-10's requirements.

Specifically, Ohio Adm. Code 4121:1-3-10(C)(3) states:

"Any scaffold including accessories, such as braces, brackets, tresses, screw legs, ladders, etc., damaged or weakened from any cause shall be immediately repaired or

replaced."

State Highway Patrol investigators reported that the gate's locking mechanism could be tripped open with minimal pressure. No one seriously disputes that the lock should have withstood greater force, and, by failing to do so, malfunctioned. However, as the appellate court properly found, a violation of Ohio Adm. Code 4121:1-3-10(C)(3) cannot be sustained without evidence of prior malfunction and employer awareness thereof.

There is no evidence that the gate lock in question had ever failed before. The first-time failure of the lock on the date of injury cannot support a finding of VSSR liability. State ex rel. M.T.D. Products v. Stebbins (1975), 43 Ohio St.2d 114, 72 O.O.2d 63, 330 N.E.2d 904.

So, too, there was no violation of Ohio Adm. Code 4121:1-3-10(C)(4)(b), which provides:

"Standard guardrails and toe boards shall be installed on all open sides and ends of platforms more than ten feet above the ground or floor, except on needle beam scaffolds and floats."

Appellant maintains that the Mite-E-Lift guardrails were rendered noncompliant by the faulty latch, which allowed the gate to open, thereby eliminating the rail's protection at that point. Again, appellant's assertion would be more persuasive, if there were proof of prior malfunction and employer knowledge thereof. Lacking such evidence, M.T.D. Products controls.

Like the regulation cited above, Ohio Adm. Code 4121:1-3-04(E)(1) also addresses guardrails:

"Standard guard railing shall be constructed as a substantial barrier, securely fastened in place and free from protruding objects * * *, to protect openings or prevent accidental contact with some object, which barrier shall consist of a top rail no less than forty-two inches above the working level, and unless the space between the top rail and working level is covered with substantial material, an intermediate rail. * * *"

Appellant's argument is premised on the same rationale as that used for urging an Ohio Adm. Code 4121:1-3-10(C)(4)(b) violation, and as stated above, M.T.D. Products controls.

Ohio Adm. Code 4121:1-3-03 covers "personal protective equipment," and its requirements "relate to the personal protective equipment listed immediately below, as required for employees on operations described in this rule in which there is a known hazard, recognized as injurious to the health or safety of the employee." (Emphasis added.) Ohio Adm. Code 4121:1-3-03(A).

Ohio Adm. Code 4121:1-3-03(J)(1) provides:

"Lifelines, safety belts and lanyards shall be provided by the employer and it shall be the responsibility of the employee to wear such equipment when engaged in securing or shifting thrustouts, inspecting or working on overhead machines that support scaffolds, or on other high rigging, on steeply pitched roofs, by employees at work on poles or steel frame construction, by employees working on all swinging scaffolds, by all employees exposed to hazards of falling when the operation being performed is more than fifteen feet above ground or above a floor or platform, and by employees required

to work on stored material in silos, hoppers, tanks, and similar storage areas. Lifelines and safety belts shall be securely fastened to the structure and shall sustain a static load of no less than five thousand four hundred pounds." (Emphasis added.)

The parties agree that an employer's responsibility to provide safety belts, etc., is triggered by the existence of a hazard. Appellant describes the hazard as the danger of falling itself and claims that the hazard is inherent any time an employee works at a height greater than fifteen feet. Appellant asserts that if this were not so, the code would not prescribe protective gear for all employees working at such heights. We disagree.

Ohio Adm. Code 4121:1-3-03(J)(1) does not require lanyards, etc. for every employee working at heights over fifteen feet. Ohio Adm. Code 4121:1-3-03's provision explaining the rule's scope demands that there be protection on operations "in which there is a known hazard, recognized as injurious to the health or safety of the employee." Likewise, Ohio Adm. Code 4121:1-3-03(J)(1) demands protection on operations above fifteen feet where the employee is "exposed to hazards of falling."

Appellant's proposal demands that this regulatory language be ignored. This conflicts with the directive that specific safety requirements be strictly construed in the employer's favor. State ex rel. Burton v. Indus. Comm. (1989), 46 Ohio St.3d 170, 545 N.E.2d 1216.

Conversely, there would be no need for Ohio Adm. Code 4121:1-3-03(J)(1) to specifically identify certain tasks as requiring lanyard protection if such regulation were as broad as appellant believes. Express enumeration of, for example, high rigging work and steel frame construction would have been unnecessary since both tasks would have been covered by the fifteen-foot-height requirement in any event.

We, therefore, find that Ohio Adm. Code 4121:1-3-03(J)(1) requires the use of safety belts on operations above fifteen feet only if employees are actually at risk of falling. We decline to adopt appellant's assertion that since decedent indeed fell, he was obviously exposed to a hazard of falling. To do so effectively imposes a strict liability on employers in the event of a fall, contrary to M.T.D., supra.

The platform at issue was enclosed by guardrails. The exposure to falling that existed despite this precaution -- indeed the fall itself -- was attributable to the gate lock's unanticipated malfunction. To find that the employer violated Ohio Adm. Code 4121:1-3-03(J)(1) is to essentially penalize Martin for its inability to predict the device's first-time failure.

Appellant points out that the Mite-E-Lift, according to its specifications sheet, was equipped with a lanyard attachment. The court of appeals ruled that the presence of the attachment was insufficient to establish that a hazard of falling existed while the guardrails were in place. As the appellate opinion noted, "[r]elator could have provided the instruction manual for this device or other such evidence to flesh out what the lanyard attachment was designed to protect against but relator simply failed to do so."

The appellate court felt that the attachment's presence was too speculative in terms of the manufacturer's purpose or intent. For example, it is possible that the attachment was designed to prevent injury when the task at hand required that the platform be used without its removable guardrails or, as the appellate court theorized:

"Indeed, this specification sheet also recognizes that the Mite-E-Lift can be used with a device called an 'Extenda-Deck rollout platform extension.' Perhaps the lanyard attachment was intended to be used only with that device. Or perhaps it was meant to be used in conjunction with tethering or transportation of equipment and tools up and down the lift. It may have only been intended to provide for specific applications not pertinent here or because of compliance with safety laws in other states. In any event, relator has failed to provide any evidence to give any meaning to this bare phrase in the specifications for the Mite-E-Lift. We therefore must decline to accept this unexplained phrase as dispositive and defer to the accumulated expertise of the commission in its construction of the safety code on the record made by relator."

We thus conclude that the employer had no reason to know that the gate's latch would malfunction. There was, therefore no recognized hazard of falling that would have forewarned Martin that lanyards, etc. were necessary. Accordingly, no violation of Ohio Adm. Code 4121:1-3-03(J)(1) is found.

For the reasons stated above, the appellate court's judgment is affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.