THE STATE EX REL. NICKELL, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Nickell v. Indus. Comm.*
(1998), 83 Ohio St.3d 185.]

(No. 95–2088—Submitted June 9, 1998—Decided September 23, 1998.)

*Hochman & Roach Co., L.P.A.,* and *Gary D. Plunkett,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Julia A. Collier,* Assistant Attorney General, for appellee.

*Per Curiam.* The parties do not dispute the appellate court's finding of *Noll* noncompliance, and the propriety of that decision has been further reinforced by the recent decisions in *State ex rel. Bruner v. Indus. Comm.* (1997), 77 Ohio St.3d 243, 673 N.E.2d 1278, and *State ex rel. Mann v. Indus. Comm.* (1998), 80 Ohio St.3d 656, 687 N.E.2d 773. *Mann* and *Bruner* involved claimants with a work history akin to that seen here—unskilled and nonsedentary. The commission denied PTD in both cases after determining that the claimant possessed job skills that would transfer to other positions. In neither case did the commission identify what these perceived "skills" were, and only in *Mann* did the commission even hint at what these potential new jobs might be.

We twice found *Noll* noncompliance and pointedly admonished the commission for its hollow orders in both cases. In *Bruner,* we wrote:

"We are disturbed by the increasing frequency with which the commission has denied permanent total disability compensation based on 'transferable skills' that the commission refuses to identify. This lack of specificity is even more troubling when those 'skills' are derived from traditionally unskilled jobs." *Id.* at 245, 673 N.E.2d at 1280.

In *Mann,* we stated:

"The commission, in finding claimant capable of work, relies overwhelmingly on claimant's past employment. Its discussion is flawed because, despite excessive verbiage, it is no more than a recitation of claimant's nonmedical profile. The commission lists claimant's work history three times but never explains how those nonsedentary jobs equip claimant for a sedentary position. Moreover, the commission's reference to 'sedentary low stress positions in the food service industry' merits further explanation. While the commission is generally not required to enumerate the jobs of which it believes claimant to be capable, its assertion that claimant could do low stress sedentary work in an industry that is traditionally considered neither low stress nor sedentary requires further exploration." *Id.* at 659, 687 N.E.2d at 776.

*Mann* and *Bruner* establish that the present claimant, at a minimum, is entitled to a *Noll* "remand." Claimant, however, urges us to go one step further and order PTD pursuant to *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666. Claimant's position is persuasive.

Our decision to order a *Noll* remand in *Bruner* does not control, due to significant factual distinctions between this case and *Bruner.* Unlike Bruner, this claimant does not have a GED and must rely on her eighth grade education. Moreover, Bruner had a low twenty-five percent impairment. The present claimant's impairment is more than double that amount.

The present claimant has also been described as a poor candidate for retraining or rehabilitation by the doctor on whom the commission expressly relied. This distinguishes this case from *Mann,* in which the vocational consultant who assessed Mann said that there were jobs for which she was medically and vocationally qualified. This factor, combined with Mann's possession of a GED, sets the present case apart.

It is difficult, in this case, to view without skepticism the commission's ability to accomplish anything meaningful upon a return for further consideration. The commission cannot identify something that does not exist, and the existence of any significant "skills" as derived from a cashier or mailroom clerk position is very dubious. The same can be said of the "many" jobs that the claimant can purportedly do. Because claimant's education, unskilled work history, and poor candidacy for retraining limit her to unskilled labor, we question how many of those jobs realistically exist in the low stress light/sedentary realm. For these reasons, we find *Gay* relief to be the more appropriate remedial option.

That portion of the appellate judgment which found *Noll* noncompliance is affirmed. That portion which returned the cause for further consideration

pursuant to *Noll* is reversed, and a writ of mandamus consistent with *Gay* is hereby granted.

*Judgment reversed in part*
*and affirmed in part.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., dissent.

———————

**COOK, J., dissenting.** I respectfully dissent from the majority's opinion. I would affirm the judgment of the court of appeals returning the case pursuant to *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245. This is not a case of vocationally unfavorable evidence paired with a high degree of physical impairment—the usual *Gay* relief profile. See *State ex rel. Domjancic v. Indus. Comm.* (1994), 69 Ohio St.3d 693, 635 N.E.2d 372.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.