**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Camaco, L.L.C. v. Albu,* Slip Opinion No. 2017-Ohio-7569.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7569

THE STATE EX REL. CAMACO, L.L.C., APPELLANT, *v.* ALBU ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Camaco, L.L.C. v. Albu,* Slip Opinion No. 2017-Ohio-7569.]**

*Workers' compensation—Violation of a specific safety requirement—Ohio Adm.Code 4123:1-5-17(G)(1)(a)(i)—Protective headgear must be provided whenever employees are required to be in places where their heads are exposed to potential hazards—Employer's argument was not waived—An employer does not face liability for violation of a specific safety requirement when it did not know of the specific danger requiring a safety device—Court of appeals' judgment denying writ of mandamus reversed and limited writ granted.*

(No. 2015-0036—Submitted January 10, 2017—Decided September 14, 2017.)

APPEAL from the Court of Appeals for Franklin County, No. 13AP-1002, 2014-Ohio-5330.

_____

**DeWine, J.**

{¶ 1} This is an appeal from the denial of a writ of mandamus in a workers' compensation matter. Robert Albu suffered a head injury while working for Camaco, L.L.C. Separate from its award of workers' compensation benefits, the Industrial Commission granted an additional award to Albu based upon its finding that Camaco had violated a "specific safety requirement" in failing to provide Albu with protective headgear.

{¶ 2} Camaco challenged the additional award by way of a mandamus action filed in the Tenth District Court of Appeals. The Tenth District denied the writ, finding that Camaco had waived a central issue it raised in its mandamus action—that Albu's injury had resulted from a latent defect in the manufacturing equipment involved in his injury—by not raising it during proceedings before the commission. We conclude that waiver does not apply in this case. The latent-defect theory was not raised by the parties below; rather, it was raised by the commission's staff hearing officer on rehearing. Thus, the mandamus action was Camaco's first opportunity to respond to this new theory.

{¶ 3} We further hold that an employer does not face liability for the violation of a specific safety requirement ("VSSR") when it lacked knowledge of a specific danger requiring a safety device. We reverse the judgment of the court of appeals and issue a limited writ of mandamus ordering the commission to determine whether Camaco knew or should have known about the latent defect at the time that Albu was injured.

### Albu's Claim

{¶ 4} Albu was injured in 2006 while working for Camaco as a "weld tech trainee." Some machinery had become jammed, and Albu was called to troubleshoot the problem. After Albu went inside a fenced enclosure containing the equipment, it suddenly restarted and struck Albu in the head. A workers' compensation claim was allowed for numerous head injuries. At issue in this case

is Albu's application for an additional award for a violation of a specific safety requirement based upon his allegation that Camaco failed to provide him suitable protective headgear pursuant to Ohio Adm.Code 4123:1-5-17(G).

{¶ 5} Under Ohio's workers' compensation system, a claimant may be entitled to separate, additional compensation when the claimant's workplace injury results from an employer's violation of a specific safety requirement. Such an award is specifically authorized in Article II, Section 35 of the Ohio Constitution. "To establish entitlement to a VSSR award, a claimant must show that a specific safety requirement * * * is applicable to the employer, that the employer violated that [specific safety requirement], and that the violation proximately caused the injury." *State ex rel. Richmond v. Indus. Comm.*, 139 Ohio St.3d 157, 2014-Ohio-1604, 10 N.E.3d 683, ¶ 17. A "specific safety requirement" is "one of the 'specific and definite requirements or standards of conduct as are prescribed by statute or by orders of the Industrial Commission.' " *Id*. at ¶ 19, quoting *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257, 291 N.E.2d 748 (1972), paragraph one of the syllabus. "[B]ecause a VSSR award is a penalty, the commission must resolve all reasonable doubts in favor of the employer." *State ex rel. Penwell v. Indus. Comm.*, 142 Ohio St.3d 114, 2015-Ohio-976, 28 N.E.3d 101, ¶ 17.

{¶ 6} The calculation of the amount of a VSSR award is tied to the workers' compensation award for the underlying workplace injury; Article II, Section 35 provides that when an injury is found to have resulted from an employer's failure to comply with a specific safety requirement, an "amount as shall be found to be just, not greater than fifty nor less than fifteen per centum of the maximum award established by law, shall be added * * * to the amount of the compensation that may be awarded on account of such injury." Although based on the same incident as the underlying workers' compensation award, a VSSR award "is not a *modification* of a previous award, but is a new, separate and distinct award."

(Emphasis sic.) *State ex rel. Curry v. Indus. Comm.*, 58 Ohio St.2d 268, 269, 389 N.E.2d 1126 (1979).

{¶ 7} Albu applied for a VSSR award based on Ohio Adm.Code 4123:1-5-17(G)(1)(a)(i), which requires employers to provide suitable protective headgear whenever employees are required to be in places where their heads are exposed to potential hazards from physical contact with rigid objects. The central issue in this case is whether that requirement was applicable to Camaco in regard to Albu.

**Factual and Procedural Background**

*Albu Suffers a Workplace Injury While Troubleshooting Malfunctioning Machinery*

{¶ 8} The machine involved in Albu's injury was a "seatback manufacturing system" designed and installed by Wayne Trail Technologies, Inc. Generally referred to as the "Wayne Trail," the machine was used to bend metal tubing to form frames for automobile seats. Included in the manufacturing system was a Motoman robot, which worked in conjunction with the Wayne Trail, moving the bent frames through the manufacturing process. The robot could be reprogrammed using a handheld device, known as a "teach pendant," that was intended to "teach" the robot to incorporate adjustments while it operated at a slow speed.

{¶ 9} The Wayne Trail and the Motoman robot were fully automated and were surrounded by a wire-mesh fence in an area sometimes referred to as the "cell." An operator monitored the machines from a control station outside the cell. Two doors allowed employees to enter the cell; each door was connected to a safety-interlock system that shut off the power to both machines when either door was opened. Metal tubing entered and exited the cell area through two separate, smaller openings in the fence. Signs posted on the fence warned, "DANGER. THIS MACHINE STARTS AND STOPS AUTOMATICALLY." (Capitalization sic.)

{¶ 10} On the day Albu was injured, Ollie Higgins was operating the Wayne Trail. The machine stopped moving, and Albu was summoned to investigate. Albu could not see the problem from outside the fence, so he decided to enter the cell. Rather than use one of the personnel doors, Albu crawled through the opening where the materials exited the cell area. Because Albu entered the cell through the material-exit chute rather than through a safety-interlocked door, the Wayne Trail remained powered with Albu inside. According to Higgins, once Albu was inside the fence, Albu said that he saw the problem and, while trying to fix it, tripped a sensor that activated the machine, causing the transfer arm of the Wayne Trail to move. The arm hit the back of Albu's head, driving his head forward into another part of the machine. Albu does not remember most of the details of the accident.

{¶ 11} The Safety Violations Investigation Unit ("SVIU") of the Bureau of Workers' Compensation investigated the incident and prepared a report. Camaco's human-resources manager, Karen Mayfield, told investigators that Camaco did not require its employees to wear hardhats to work on the Wayne Trail or the Motoman robot but they were available upon request. The SVIU's report also noted that there were conflicting statements about why Albu had entered the fenced-in area through the material-exit opening. Albu claimed that he had been trained to do so, but Camaco officials said that Albu had improperly bypassed the safety-interlocked doors and had not properly used the teach pendant.

*Albu's Application for an Additional Award for a VSSR Is Initially Denied, but the Commission Grants His Motion for Rehearing*

{¶ 12} A staff hearing officer initially denied Albu's VSSR application, concluding that "[t]he question of whether or not head protection was required or whether or not there was a violation of [Ohio Adm.Code] 4123:1-5-17(G) is not pertinent" because "there would have been no potential for a head injury to occur * * * had the personnel doors been used by Mr. Albu"; entry through the personnel

doors would have "de-energized" the cell and thus prevented any movement by the transfer arm while he was inside.

{¶ 13} Albu moved for rehearing, arguing that the hearing officer misunderstood what Albu was required to do to troubleshoot problems with the equipment. Albu cited evidence supporting his position that he had to be inside the cell in order to see the robot and that he needed power to the area to diagnose the problem. According to Albu, he was in danger of being struck regardless of how he entered the cell, because the power had to be on to both the Wayne Trail and the Motoman robot for him to assess the problem. He argued that Camaco knew of the danger, because it posted warning signs at both entrance doors and at the openings where material entered and exited the cell.

{¶ 14} Camaco opposed rehearing, arguing that Albu could have troubleshot from outside the cell without putting himself in danger and that he was injured because he had improperly entered the cell through the material-exit chute. Camaco noted that expert witnesses in related intentional-tort and product-liability litigation had determined that Albu had circumvented safety features when he crawled through the material-exit chute. The commission granted Albu's request for rehearing.

*On Rehearing, the Staff Hearing Officer Grants a VSSR Award to Albu on a Theory Not Raised by Either Party*

{¶ 15} On rehearing, the parties set forth their familiar arguments before a different staff hearing officer. Camaco continued to argue that it was not necessary for Albu to be inside the cell with the power on to both machines to troubleshoot. It further argued that if he had entered through one of the personnel doors—which would have shut down power to the cell—he could have used the teach pendant while only the robot (in teach mode), and not the Wayne Trail, was powered. Albu, on the other hand, argued that he had to be inside the cell to perform his job and

that the entire manufacturing system had to be powered for him to activate the robot.

{¶ 16} The hearing officer did not accept either party's view but rather decided the case on a completely different theory altogether. The hearing officer acknowledged that Albu had "bypassed a safety device" when he entered the cell through the material-exit chute but concluded that the injury would have occurred even had he gone through one of the personnel doors. The hearing officer relied on a report from Vernon Mangold Jr. that had been submitted in Albu's related intentional tort and product-liability civil action. The hearing officer stated:

> The file contains a report from Vernon Mangold, an expert in the design and operation of robotic systems. Mr. Mangold indicated that it was not possible for [Albu] to enter the enclosure and then turn on power only to the robot by means of the teach pendant. Mr. Mangold states that the transfer arm of the bending machine was capable of moving at full speed when the robot was in teach mode. *He indicated that even the employees of Wayne Trail who trained the employees of [Camaco] were not aware of this.*
>
> The Hearing Officer finds that [Camaco] did present a potential hazard of head contact with rigid objects as the system did not permit power to be turned off to the bending machine when power to the robot was activated. [Camaco], therefore, should have provided head protection to [Albu]. * * *
>
> It is therefore ordered that an additional award of compensation be granted to [Albu].

(Emphasis added.)

**{¶ 17}** In other words, the hearing officer determined that a defect in the manufacturing system—a defect that even the designer/installer of the system was unaware of when it trained Camaco's employees—created a condition that required Camaco to provide head protection to its employees.

**{¶ 18}** The hearing officer's decision granting Albu's application for a VSSR award—"in the amount of thirty-five percent of the maximum weekly rate"—was a final order. Ohio Adm.Code 4121-3-20(E)(4). The commission summarily denied Camaco's motion for rehearing (treating it as a "request for reconsideration") and likewise summarily denied Camaco's motion to vacate the denial of its motion for rehearing.

*The Tenth District Finds that Camaco Waived the Latent-Defect Issue*

**{¶ 19}** Camaco filed a complaint for a writ of mandamus in the Tenth District Court of Appeals, alleging that the commission had abused its discretion because the VSSR award was

> based solely upon the affidavit of a non-testifying expert who opined, in the context of a separate products liability case against the manufacturer of the machine which Albu was repairing, that there were design flaws in the machine that could have rendered the machine's safety interlock devices ineffective to protect users against injury from moving machinery.

**{¶ 20}** Camaco also alleged that there was no evidence that Camaco knew or should have known of the design flaws.

**{¶ 21}** A magistrate appointed to hear the case refused to consider Camaco's defense of lack of knowledge of the design defect because Camaco had not raised the issue of a hidden, latent defect in the Wayne Trail system during proceedings before the commission. The magistrate noted that Mangold's report

8

constituted some evidence that even if Albu had entered through the safety-personnel doors, the transfer arm of the Wayne Trail would have been capable of moving at full speed with the robot in teach mode. Thus, the magistrate concluded that the commission did not abuse its discretion when it awarded compensation for a violation of a specific safety requirement.

{¶ 22} Camaco filed objections to the magistrate's report. The court of appeals overruled the objections and denied the writ. This matter is before the court on Camaco's appeal as of right.

**Analysis**

*Camaco Did Not Waive the Latent-Defect Issue*

{¶ 23} Camaco argues that it cannot be found liable for a violation of a specific safety requirement when the injury to its employee resulted from a hidden, latent design or manufacturing defect in the equipment that the employee was operating and the employee bypassed existing safety devices. Camaco maintains that because the hearing officer sua sponte introduced the latent-defect issue in the commission's final decision, it had no opportunity to challenge the finding at the administrative level. Thus, Camaco argues, the doctrine of appellate waiver should not prevent it from seeking mandamus relief.

{¶ 24} We agree.

{¶ 25} On rehearing, the commission's staff hearing officer premised the VSSR award on a theory that had not been raised by Albu—that there was a latent defect in the manufacturing equipment involved in his injury. The hearing officer then determined that because of this defect, Camaco should have provided protective headgear to Albu, but the hearing officer cited no evidence in the record that Camaco knew of the purported defect and the concomitant need for protective headgear. To the contrary, the hearing officer found that the manufacturer/installer of the Wayne Trail was unaware of the defect when it was training Camaco's employees on the machinery.

**{¶ 26}** The sole evidence of a design defect came from Mangold's report. Although the report had been submitted by Camaco at the original hearing along with other reports to demonstrate that Albu's own experts had confirmed that Albu had circumvented the safety-door feature, it was never relied on by Albu during the proceedings on rehearing. Indeed, Mangold never testified as an expert in the VSSR litigation, and neither party argued that Albu's injury resulted from a design defect in the equipment.

**{¶ 27}** Camaco should not be expected to have anticipated that the hearing officer would rely upon a theory not advanced by either party. An award for the failure of a safety measure "cannot be sustained without evidence of prior malfunction and employer awareness thereof." *State ex rel. Taylor v. Indus. Comm.*, 70 Ohio St.3d 445, 447, 639 N.E.2d 101 (1994); *see also State ex rel. Pressware Internatl., Inc. v. Indus. Comm.*, 85 Ohio St.3d 284, 290, 707 N.E.2d 935 (1999). And just as an employer cannot be held liable for the first-time failure of a safety device, *State ex rel. M.T.D. Prods., Inc. v. Stebbins*, 43 Ohio St.2d 114, 118, 330 N.E.2d 904 (1975), so too must an employer be free from liability for not providing a safety device when it lacked knowledge of the existence of a specific danger requiring such a device.

**{¶ 28}** The court of appeals held that Camaco waived any opportunity to raise its lack of knowledge of the defect that could have caused Albu's injury by failing to raise the issue in its motion for rehearing at the commission level. *See State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81-83, 679 N.E.2d 706 (1997) (the rule that a reviewing court will not consider an issue that was not presented to the court below also applies in a mandamus action in which an administrative determination is challenged). However, Camaco's motion for rehearing was essentially a nullity: Ohio Adm.Code 4121-3-20(E)(4) states that in VSSR proceedings, "[i]n no case shall a rehearing be granted from an order adjudicating a rehearing." Thus, Camaco's mandamus action was its first

meaningful opportunity to challenge the hearing officer's award. Therefore, we hold that Camaco did not waive its ability to argue in this mandamus case that the commission abused its discretion by basing its award on a condition that Camaco did not know existed.

*The Commission Must Resolve the Factual Question Whether Camaco Knew of the Design Defect at the Time of Injury*

{¶ 29} The determination of the extent of Camaco's knowledge was left unaddressed by the commission. The staff hearing officer on rehearing found that the company that designed and installed the industrial system was unaware of the defect that caused Albu's accident when it trained Camaco's employees. The hearing officer did not, however, make a specific finding that Camaco remained unaware of the defect at the time of Albu's accident. We should not make the factual determination of the extent of Camaco's knowledge here; "[f]actual questions relevant to proof of a VSSR rest exclusively within the discretion of the commission." *State ex rel. Scott v. Indus. Comm.*, 136 Ohio St.3d 92, 2013-Ohio-2445, 990 N.E.2d 598, ¶ 12, citing *State ex rel. Haines v. Indus. Comm.*, 29 Ohio St.2d 15, 278 N.E.2d 24 (1972).

**Conclusion**

{¶ 30} Therefore, we reverse the judgment of the court of appeals and issue a limited writ of mandamus ordering the commission to vacate its order granting the VSSR award and to determine whether Camaco, at the time of the injury, knew or should have known about the specific defect that gave rise to the need for protective headgear. If Camaco lacked the requisite knowledge of the defect at the time of the injury, it cannot have violated a specific safety requirement.

Judgment reversed
and limited writ granted.

O'CONNOR, C.J., and FRENCH and FISCHER, JJ., concur.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by O'DONNELL, J.

O'NEILL, J., dissents, with an opinion.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 31} Because this court does not require the Industrial Commission to perform futile acts, I respectfully dissent in part. In the past, this court has remanded cases to the commission for factual determinations when the facts are unclear, but when the facts are clear and the evidence is "overwhelming," we have resolved cases based on our own factual determinations. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315, 323, 626 N.E.2d 666 (1994). As the majority recognizes, the commission can grant an award for the violation of a specific safety requirement ("VSSR") only when an employer had knowledge of the existence of a specific danger requiring the employer to provide safety protection. Because the commission's staff hearing officer ("SHO") who considered this matter upon rehearing made no finding that appellant, Camaco, L.L.C., knew of the latent defect at issue in this case and because the evidence does not support such a finding, that SHO abused her discretion in granting the VSSR claim. Therefore, although I agree with the majority that the judgment of the Tenth District Court of Appeals must be reversed, I disagree with its determination that only a limited writ is warranted. I would fully grant the writ of mandamus sought by Camaco and would order the commission to vacate the VSSR award.

**I. Facts**

{¶ 32} I agree with the statement of facts set forth in the majority opinion. However, there are other facts that should be highlighted and described in greater detail to give additional context to those stated in the majority opinion.

{¶ 33} While the majority is correct that appellee Robert Albu does not remember many of the details surrounding the accident, his coworker, Ollie

12

Higgins, was present when the machinery jammed and does remember the accident. Albu circumvented the safety protections provided in the system that included the Wayne Trail machine when he entered the energized cell with the teach pendent by crawling through the material-exit chute. At that time, Albu knew that the machinery was fully energized and capable of operation. Higgins testified in a deposition that Albu did not use the teach pendent to troubleshoot the problem. Instead, Albu visually observed the machinery and called out, "I see what the problem is." According to Higgins, Albu then "hit the part, it hit the sensor, and that's when the machine activated," causing the transfer arm to strike Albu in the back of the head.

{¶ 34} On June 19, 2008, more than two years after the accident and in response to Albu's filing of his VSSR claim, Stephanie Fox, who was Camaco's safety coordinator at the time of the accident, described Camaco's view of how the machinery operated if an employee entered the cell through one of the personnel doors: "The two doors are equipped with electronic safety interlocks connected to all equipment located within the enclosure. When either access door is open, the tube bending machine and the [Motoman] robot are rendered inoperable."

{¶ 35} In June 2010, an affidavit and report prepared by Albu's expert witness, Vernon Mangold Jr., was submitted as evidence in the separate civil litigation pursued by Albu in common pleas court. Mangold opined that the manufacturer of the Wayne Trail erroneously believed that entering the work cell through one of the personnel doors made the transfer arm of the machine incapable of moving at full speed. Mangold concluded that the manufacturer of the Wayne Trail "did not provide Camaco with the requisite controls necessary to safely recover from production interruptions and delays."

{¶ 36} Mangold's report was not the only expert report before the commission. In 2009, after personally inspecting the Wayne Trail system, another expert hired by Albu, Steven Kramer, stated in a report he prepared for the case

filed in common pleas court that Camaco and its employees were unaware that the robot would "operate in teach mode with the interlocking [personnel door] open." After reviewing the pleadings and depositions filed in common pleas court, Tarald Kvalseth, a third expert hired by Albu for the civil litigation, stated that in his opinion, the Wayne Trial system was defective when it left the control of the manufacturer. Kvalseth also discovered that the manufacturer did not give Camaco the operating manual when it delivered the system to the company. While the manufacturer gave Camaco the manual several weeks after the equipment was in use, the manual failed to adequately explain "how the robot could still have been controlled if an individual entered the cell through an interlocked gate" and how the "fault recovery" program worked, which would have minimized the need for Camaco employees to enter the cell to repair it. Finally, Kvalseth concluded that the manufacturer had failed to adequately train Camaco's employees in the proper procedures for fault recovery when the Wayne Trail system jammed.

{¶ 37} The system had been installed not long before the injury occurred. It went into operation on August 22, 2005, and Albu was injured about five months later, on January 31, 2006.

{¶ 38} The first SHO who considered Albu's VSSR claim denied it on the basis that he had intentionally circumvented the safety features of the Wayne Trail system by using the material-exit chute to enter the cell.

{¶ 39} The second SHO, in overturning that determination upon rehearing, relied on Mangold's report to find that even if Albu would have properly entered the cell through one of the personnel doors, the injury would have occurred anyway, because the transfer arm of the Wayne Trail machine "was capable of moving at full speed when the robot was in teach mode."

## II. Analysis

{¶ 40} I agree with the majority's conclusion that Camaco did not waive the latent-defect argument and with its holding that "an employer does not face

liability" for a VSSR "when it lacked knowledge of a specific danger requiring a safety device." Majority opinion at ¶ 3. However, I disagree with the reasoning the majority uses to resolve whether Camaco waived the latent-defect argument.

{¶ 41} Although the general rule is that "this court will not consider arguments that were not raised * * * below," *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993), *modified in part on other grounds, Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, syllabus, this court has stated, "When an issue of law that was not argued below is implicit in another issue that was argued and is presented by an appeal, we may consider and resolve that implicit issue," *Belvedere* at 279.

{¶ 42} Because an employer must have knowledge of a particular danger in order to be charged with a duty to provide protection from that danger, *see State ex rel. Taylor v. Indus. Comm.*, 70 Ohio St.3d 445, 447, 639 N.E.2d 101 (1994); *see also State ex rel. M.T.D. Prods., Inc. v. Stebbins*, 43 Ohio St.2d 114, 118, 330 N.E.2d 904 (1975), the issue whether an injury was caused by an unknown latent defect is always implicit in analyzing a VSSR claim. For this reason, I agree with the majority, albeit on different grounds, that the issue regarding the latent defect was not waived.

{¶ 43} Having determined that the latent-defect issue was not waived, I turn to the issue before us regarding the second SHO's alleged abuse of discretion in granting Albu's VSSR claim.

{¶ 44} " 'Abuse of discretion' connotes more than a mere error of law or judgment, instead requiring a finding that" the decision under review "was unreasonable, arbitrary, or unconscionable." *Darby v. A-Best Prods. Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, 811 N.E.2d 1117, ¶ 13, citing *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, ¶ 5. We have held that the commission abuses its discretion when "the commission's

decision was rendered without some evidence to support it." *State ex rel. Tradesmen Internatl. v. Indus. Comm.*, 143 Ohio St.3d 336, 2015-Ohio-2342, 37 N.E.3d 1203, ¶ 12, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20, 508 N.E.2d 936 (1987).

{¶ 45} As the majority recognizes, in order to grant Albu's VSSR claim, the second SHO was required to find that Camaco knew about the latent defect at the time the injury occurred. *See Taylor*, 70 Ohio St.3d at 447, 639 N.E.2d 101. However, the second SHO made no such finding.

{¶ 46} As set forth above, the first SHO, in denying Albu's VSSR claim, found that Albu's intentional act of bypassing the safety protections provided in the Wayne Trail system by crawling through the material-exit chute and entering into the energized cell was the cause of his injury. The second SHO, in overturning the denial of the claim, found that even if Albu had entered into the cell through a personnel door and then placed the robot in teach mode, the injury would have occurred anyway because the Wayne Trail's arm was still capable of moving at full speed. In reaching that determination, the second SHO relied on the report of Albu's expert, Mangold. Mangold concluded that this design defect was unknown to the system's manufacturer. Importantly, the second SHO made no finding that Camaco knew of the latent defect. Therefore, the determination that Camaco was required to provide protective headgear was unreasonable.

{¶ 47} Although the majority agrees that the second SHO did not cite any evidence to support a required finding that Camaco "knew of the purported defect and the concomitant need for protective headgear," majority opinion at ¶ 25, the majority does not independently examine the evidence in the record to determine whether there is any evidence to suggest that Camaco knew about the latent defect. In the past, this court has looked at the record in a case of this type to determine whether remand is appropriate. *Gay*, 68 Ohio St.3d at 322-323, 626 N.E.2d 666.

**{¶ 48}** Mangold concluded in his report that the manufacturer of the Wayne Trail erroneously believed that entering the work cell through one of the personnel doors made the transfer arm of the machine incapable of moving at full speed. Mangold stated that the manufacturer did not know about the design defect when Camaco's employees were trained and essentially concluded that Camaco was unaware of it at the time of Albu's injury. Kramer, another of Albu's experts, stated in his report that "the robot will operate in teach mode with the interlocking [personnel door] open," and that "this was not adequately, if at all, conveyed to Camaco since Mr. Albu and other Camaco employees did not know of this feature."

**{¶ 49}** Camaco's belief that entering the work cell through one of the personnel doors made the transfer arm of the bending machine incapable of moving was supported by the testimony of Camaco's safety supervisor. Two years after Albu's injury, Camaco's safety supervisor testified that "[w]hen either access door is open, the tube bending machine and the robot are rendered inoperable."

**{¶ 50}** Acknowledging that the Wayne Trail system was defective, another of Albu's experts, Kvalseth, concluded that Camaco's employees did not know the proper fault-recovery steps to take when the system jammed because those steps were not sufficiently explained in the system manual, which they did not receive until after the system was installed. Moreover, in Kvalseth's opinion, the manufacturer failed to adequately train Camaco's employees. Therefore, they did not have an adequate understanding of how the system operated at the time of the accident.

**{¶ 51}** Having reviewed the entire record, "[i]t is difficult, in this case, to view without skepticism the commission's ability to accomplish anything meaningful upon a return for further consideration. The commission cannot identify something that does not exist." *State ex rel. Nickell v. Indus. Comm.*, 83 Ohio St.3d 185, 188, 699 N.E.2d 69 (1998).

### III.  Conclusion

{¶ 52} Because (1) an employer must have knowledge of the existence of a specific danger requiring the employer to provide safety protection, (2) the second SHO made no finding that Camaco knew of the latent defect and failed to protect against it, and (3) a review of the record demonstrates that there is no evidence to support such a finding, I dissent in part and would not remand this case to the commission.  "There comes a point in time when, in light of the overwhelming evidence, the courts must say, 'enough is enough.' "  *Gay*, 68 Ohio St.3d at 323, 626 N.E.2d 666.  Given that more than a decade has passed since Albu filed his VSSR claim, today is that day.  Therefore, I would reverse the judgment of the Tenth District Court of Appeals, fully grant the writ of mandamus, and order the commission to vacate the VSSR award.

O'DONNELL, J., concurs in the foregoing opinion.

_____

**O'NEILL, J., dissenting.**

{¶ 53} I must respectfully dissent.  Specifically, I disagree with the majority's conclusion that the doctrine of appellate waiver does not apply in this case. There can be no relief in mandamus when the party seeking this extraordinary writ has failed to raise a defense at the administrative level.

{¶ 54} To prevail in this mandamus case, appellant, Camaco, L.L.C., must demonstrate that appellee Industrial Commission's decision to issue an award for the violation of a specific safety requirement ("VSSR") amounted to an abuse of discretion.  Abuse of discretion occurs when the record contains no evidence to support the commission's findings.  *State ex rel. Burley v. Coil Packing, Inc*., 31 Ohio St.3d 18, 20, 508 N.E.2d 936 (1987).  So long as there is some evidence supporting the commission's order, there is no abuse of discretion and the court

must uphold the commission's decision. *State ex rel. Turner Constr. Co. of Ohio v. Indus. Comm.*, 142 Ohio St.3d 310, 2015-Ohio-1202, 29 N.E.2d 969, ¶ 12.

{¶ 55} Camaco contends that there is no evidence supporting the commission's decision that it violated Ohio Adm.Code 4123:1-5-17(G)(1)(a)(i). Camaco now maintains that the injuries to appellee Robert Albu were caused by a hidden, latent defect in the industrial system that included the Wayne Trail machine and by Albu's bypassing of the safety devices that may have protected him. But Camaco did not raise the latent-defect defense in the proceedings before the commission, and the facts found by the commission's hearing officer are supported by evidence in the record. It is irrelevant that some members of this court would have interpreted the facts differently if they had been called on to make the administrative determination in this case. They were not.

{¶ 56} Appellees argue that Camaco failed to raise the defense of a latent defect at the administrative level, so it is waived. Appellees are correct. It is simply not permissible for Camaco to retry its case in a mandamus action at the court of appeals and raise, for the first time, the latent-defect defense. Camaco alleges that the expert report in the administrative record of this case prepared by Vernon Mangold Jr. identified a hidden, latent design defect that was responsible for Albu's injuries. According to Camaco, it cannot be found liable for an unknown hazard. *See State ex rel. Maghie & Savage, Inc. v. Nobel*, 81 Ohio St.3d 328, 330, 691 N.E.2d 277 (1998). But, Camaco argues, it had no opportunity to challenge the finding at the administrative level because the hearing officer sua sponte introduced the issue in the final decision. Thus, Camaco argues, the doctrine of appellate waiver should not preclude it from seeking mandamus relief.

{¶ 57} A review of the record demonstrates otherwise. Camaco had Mangold's report, which had been prepared for the related tort litigation, no later than 2010, well before the first hearing on the VSSR application, which occurred

on December 19, 2012. Camaco submitted the report, along with reports from two other expert witnesses hired by Albu and other evidence, to the commission prior to the 2012 hearing. Counsel for Camaco referred to the experts' reports at both VSSR hearings, in support of its argument that employees were not supposed to enter the fenced-in area surrounding the machinery when the power was on. However, counsel never raised the issue of a hidden, latent defect as a defense.

{¶ 58} A reviewing court need not consider questions not presented to the court below. *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81, 679 N.E.2d 706 (1997). This rule likewise applies in mandamus actions in which administrative determinations are challenged. *Id*. at 81-83. Under the circumstances here, the court of appeals did not abuse its discretion when it concluded that Camaco had waived the defense.

{¶ 59} Camaco argues, in the alternative, that the court should apply the plain-error doctrine to remedy a manifest injustice. In civil cases, the plain-error doctrine is limited to the extremely rare case involving exceptional circumstances "where the error, left unobjected to * * *, rises to the level of challenging the legitimacy" of the underlying proceeding itself. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122, 679 N.E.2d 1099 (1997). Here, Camaco was aware of Mangold's report, submitted it as evidence in the proceedings before the commission, and had ample opportunity to raise the defense. Camaco's argument based on the plain-error doctrine fails.

{¶ 60} In order for Camaco to rely on the latent-design-defect defense, Camaco had to raise it at the administrative level. It is clear from the record that Camaco knew about the concerns regarding the latent defect before the hearing but did not raise the defense until it filed its mandamus action in the court of appeals. Camaco has lost the right to rely on the defense. It should not be given another bite at the apple. And because "some evidence" supports the commission's order, it

should be upheld. *Turner Constr. Co.*, 142 Ohio St.3d 310, 2015-Ohio-1202, 29 N.E.3d 969, at ¶ 12. Therefore, I must dissent.

_____

Collins, Roche, Utley & Garner, L.L.C., Richard M. Garner, and Sunny L. Horacek, for appellant.

Michael DeWine, Attorney General, and Kevin S. Reis, Assistant Attorney General, for appellee Industrial Commission.

Bentoff & Duber Co., L.P.A., and Glen S. Richardson, for appellee Robert J. Albu.

_____